**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Joseph B. Holmberg, et al.** | ) | **CASE NO. 1:07 CV 1849** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Patrolman Tieber, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**Introduction**

This matter is before the Court upon Motion of Defendants Tieber and Reasor for Summary Judgment (Doc. 18). This is a § 1983 case alleging excessive force by police officers. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiffs, Joseph B. Holmberg and Tara Holmberg, filed their First Amended Complaint against defendants, Patrolman Tieber and Patrolman Reasor.[1]  Tieber and Reasor

---

[1]  Plaintiffs also named as defendants Patrolmen Ambrose, Smith and Grossnickle. This Court, however, granted defendants' Motion to Quash Service of Summons and the First Amended Complaint as to these newly added defendants.

1

are police officers for the City of Broadview Heights.

Plaintiffs do not dispute the following facts taken from the police report of Patrolman Reasor, attached to his declaration.  (Doc. 18 Ex. A)

On May 18, 2006, at approximately 10:45 p.m., Patrolman Reasor was on routine patrol and observed a pickup truck traveling in front of him.  Reasor observed the truck swerving left of center and off the right side of the roadway. The truck also made a wide right turn without obeying a stop sign and began traveling at a high rate of speed. As the truck continued to weave, Patrolman Reasor activated the overhead lights on his police cruiser to initiate a traffic stop. The truck continued on but then turned into a gas station and drove all the way up to the pumps before stopping. Patrolman Tieber arrived to provide backup.

Patrolman Reasor exited his vehicle, approached the driver's side of the truck, and observed three occupants: a male driver (Mr. Holmberg) and two female passengers, one of whom was Mrs. Holmberg. Patrolman Reasor smelled a strong odor of alcoholic beverage coming from the vehicle.  Reasor advised Mr. Holmberg as to why he had been stopped.  Mr. Holmberg's speech was thick-tongued and slurred, his eyes appeared glassy, and he repeatedly stated, "Sorry sir, sorry sir."  As he spoke, Reasor smelled a very strong odor of alcoholic beverage coming from Mr. Holmberg's mouth.  The two passengers also exhibited physical indicators that they were highly intoxicated. An information check revealed that the passenger had an outstanding misdemeanor warrant, and so she was taken into custody by another police officer who responded to assist.

Mrs. Holmberg was placed in the back of Patrolman Tieber's cruiser because she was so intoxicated that she was unable to stand without falling.  Meanwhile, Patrolman Reasor

2

administered field sobriety tests to Mr. Holmberg. Although Mr. Holmberg stated that he was "the least drunk" of the three and felt that he was able to drive, he failed all of the tests. As the testing continued, Mr. Holmberg began to be agitated and began using profane language. Patrolman Reasor asked Mr. Holmberg if he would provide a breath sample into a portable breath tester. Mr. Holmberg agreed and registered a blood alcohol content over 0.200. Patrolman Reasor then advised Mr. Holmberg that he was under arrest for OVI (operating a vehicle under the influence) and applied handcuffs to Mr. Holmberg. Mr. Holmberg then became more agitated and very argumentative, used profane language, begged to be "given a break," and refused to get into the back seat of the cruiser until having been told to do so three or four times.

After Mr. Holmberg was arrested, Mrs. Holmberg became very angry and aggressive in the back of Patrolman Tieber's vehicle. She banged her hands and arms against the window loudly enough to be heard by Reasor 30 feet away where he was inventorying the truck in preparation for a tow. As Mrs. Holmberg screamed obscenities, she was observed to have a white foamy substance around her mouth which can be an indication of drug use. Mrs. Holmberg refused Patrolman Tieber's efforts to calm her, and persisted in screaming, cursing and flailing her arms in an aggressive manner. Mrs. Holmberg was removed from the car and handcuffed for disorderly conduct. She then became physically combative and resisted when being put back into the car, kicking Patrolman Tieber in the face, causing his eyeglasses to be removed and the frame slightly bent. Patrolman Reasor then transported Mr. Holmberg to the Broadview Heights Police Station and escorted him into the videotaped booking room. (Doc. 18 Ex. A)

While Patrolman Reasor's police report further recounts the events which occurred in the videotaped booking room, defendants also provide the Court with the video recording of the booking of Mr. Holmberg. (Doc. 19) Plaintiffs also submit their written version of the events which transpired in the booking room. While the two written accounts differ somewhat from each other, the Court has itself viewed the video recording.

According to Reasor's police report, the following transpired in the booking room. Mr. Holmberg had to be given instructions repeatedly by Reasor, regardless of the task. Field sobriety tests were administered a second time, and Mr. Holmberg also agreed to provide a breath sample. Although Patrolman Reasor provided clear and repeated instructions, Mr. Holmberg was unable, or unwilling, to properly complete the breath test. However, even though Mr. Holmberg gave only partial breath samples, Patrolman Reasor observed blood alcohol content levels of .215-.220. Despite the fact that Mr. Holmberg was told to sit down, he stood up several times in an attempt to retrieve his driver's license, which Reasor had told him would be confiscated, and the paper from the datamaster machine. During the entire booking process, Mrs. Holmberg could be heard screaming loudly from her cell. Additionally, Mr. Holmberg continuously used profane and aggressive language. Patrolman Reasor continued to process Mr. Holmberg, which included asking him questions on an alcohol influence form. When asked, "What time is it now?", Mr. Holmberg answered, "Where's the clock?" Patrolman Reasor told him that there was no clock and that he had to give his best guess. Mr. Holmberg, who was unrestrained at the time, reached up from his seated position and grabbed Patrolman Reasor's forearm with a tight grip and began to pull the officer's arm towards him. Reasor reached across with his other arm and pushed Mr.

4

Holmberg in the face with both hands. Mr. Holmberg did not release his grip. At this time, Patrolman Tieber, another police officer, and jail personnel came to Patrolman Reasor's assistance and took Mr. Holmberg to the floor to get him back under control. The officers repeatedly attempted to apply handcuffs, but Mr. Holmberg resisted and fought with them. (Doc. 18 Ex. A) Patrolmen Reasor and Tieber aver that they did not kick, punch, or otherwise strike Mr. Holmberg, nor did they observe any other person do so. (declarations of Reasor and Tieber)

After Mr. Holmberg was handcuffed, it was observed that he was bleeding from his face. The Broadview Heights Fire Department squad was immediately summoned to assess Mr. Holmberg's condition, but he refused treatment or to go to the hospital. The squad then left and the booking was completed. (Doc. 18 Ex. A)

Mr. Holmberg was charged with OVI, speeding, assault, obstructing official business, resisting arrest, and disorderly conduct. He subsequently pleaded guilty to OVI and resisting arrest. (Joseph Holmberg depo. 38-39) Mrs. Holmberg was charged with disorderly conduct, obstructing official business and assault.[2]

After Mr. Holmberg was released on bond, he went to a hospital emergency room, where he was examined by a physician and x-rays were taken. The x-rays were negative. The doctor's diagnosis was a chest wall contusion and laceration, and Mr. Holmberg was given prescriptions for Motrin and Flexeril. Mr. Holmberg was instructed to follow up in three days,

---

[2] While in the detoxification cell at the Broadview Heights Police Department, Patrolman Tieber attempted to remove Mrs. Holmberg's shoes. Mrs. Holmberg "clawed" the back of Patrolman Tieber's head, leaving a four inch bloody wound. (Tieber decl. Ex. A)

5

but he did not return until a week later. During that follow-up visit, Mr. Holmberg did not receive any treatment. (Joseph Holmberg depo. at 12-18).

Plaintiffs' version of the events occurring in the booking room differ. According to plaintiffs, after asking, "Where is the clock?" Mr. Holmberg reached up from his seated position and touched Reasor's watch. Reasor pulled away. Despite being free from Mr. Holmberg's touch, Reasor struck Mr. Holmberg with his hand in the face. Immediately, the other officers brought Mr. Holmberg to the floor. While down, Patrolman Tieber appears to kick Mr. Holmberg about the head although Mr. Holmberg did not impede the officers from placing him in handcuffs.

The Court has viewed the video recording which shows the following. After Patrolman Reasor told Mr. Holmberg that he had to make a guess as to the time, Holmberg reached up from his seated position and grabbed Reasor's wrist tightly enough so that Reasor had to pull his arm back, and slap the hand away with his free arm, in order to release Holmberg's grip. Once free of the grip, Reasor immediately forcefully pushed his hands into Holmberg's face. At that point, the other officers in the booking room instantly converged on Mr. Holmberg, grabbing him and bringing him to the floor. A struggle of several moments ensued wherein the officers are heard to tell Mr. Holmberg numerous times to get his hands behind his back. It is unclear whether Mr. Holmberg was being kicked or otherwise struck.

Plaintiffs thereafter filed their First Amended Complaint asserting seven claims. However, the First Amended Complaint skips the fourth and seventh causes of action and, thus, contains what is labeled as nine counts. Count One alleges excessive force in violation of the Fourteenth Amendment under § 1983. Count Two alleges battery. Count Three alleges

assault. Count Five and asserts intentional infliction of emotional distress. Count Six alleges negligent infliction of emotional distress. Count Eight alleges negligence and negligence per se. Count Nine alleges loss of consortium.

This matter is now before the Court upon Motion of Defendants Tieber and Reasor for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue

7

>       for trial.  If he does not respond, summary judgment, if
>       appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

**(1) § 1983 claim**

Defendants assert they are entitled to qualified immunity with regard to the § 1983 claim asserted in Count One.

"The doctrine of qualified immunity shields government officials from liability, as well as from suit, so long as their official conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardy v.*

*Jefferson Community College*, 260 F.3d 671 (6th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   The Sixth Circuit has explained:

> The Supreme Court has instructed that a qualified immunity inquiry generally entails two discrete analytical steps.  As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that 'the officer's conduct violated a constitutional right.' *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  'If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.' *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  'On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.' 533 U.S. at 201, 121 S.Ct. at 2156; *see also Burchett*, 310 F.3d at 942.

*Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).

With regard to the question of whether the right was clearly established, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.

Therefore, this Court must first determine whether plaintiffs have demonstrated the violation of a constitutionally protected right.  Plaintiffs herein allege that Mr. Holmberg's Fourteenth Amendment federal constitutional rights were violated by defendants' use of excessive force.  Because Mr. Holmberg had been arrested, however, this Court must apply a Fourth Amendment analysis.  *Henderson v. Reyda,* 192 Fed.Appx. 392 (6th Cir. 2006) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989) ) ("*[A]ll* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

'reasonableness' standard, rather than under a 'substantive due process' approach.")

In order to make a showing of excessive force under the Fourth Amendment's "objective reasonableness" test, courts must view the reasonableness of any seizure in light of the totality of the circumstances and analyze the facts "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. at 307 (quoting *Graham,* 490 U.S. at 396).  When conducting a reasonableness analysis, courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  *See also Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001); *Ewolski v. City of Brunswick*, 287 F.3d 492, 507 (6th Cir. 2002).  A determination of reasonableness must also consider the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.  An officer's underlying intent is not relevant in evaluating "objective reasonableness:" "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."  *Id.* at 397.

The Sixth Circuit has recently recognized that under the Fourth Amendment, "a governmental seizure of an individual must be reasonable, a rule that applies to an officer's use of force during a booking procedure.  Force in this setting becomes constitutionally excessive if it is objectively unreasonable in light of the facts and circumstances confronting

the officer." *Lawler v. City of Taylor,* 2008 WL 624770 (6th Cir. March 5, 2008) (citing *Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002) and *Graham,* 490 U.S. at 397).

Although the Court's "reasonableness" analysis "is largely fact-driven, summary judgment for defendant public servants founded in qualified immunity is nonetheless appropriate when the undisputed material facts, or the plaintiff's version of disputed material facts, demonstrate that a hypothetical reasonable officer would not have known that his actions, under the circumstances, were objectively unreasonable." *DeMerrell v. City of Cheboygan,* 206 Fed.Appx. 418 (6th Cir. 2006).

Plaintiffs assert that Mr. Holmberg merely touched Patrolman Reasor's watch from his low seated position, and that he was not assaulting a police officer or resisting arrest as he was already under arrest. As such, plaintiffs contend that reasonable minds could differ as to whether the force used by defendants was objectively reasonable.

Defendants assert that the only force used by Reasor and Tieber was that required to control Mr. Holmberg after he grabbed Patrolman Reasor. In addition to the video recording, defendants submit the expert report of Samuel Faulkner who opines that Reasor's and Tieber's responses were reasonable in relation to Mr. Holmberg's hostile, aggressive and threatening actions. (Faulkner decl. Ex. A)

For the following reasons, the Court concludes that there is no issue of material fact as to whether excessive force was used.

After the viewing the video recording, the Court notes that neither party's version of the pertinent facts is entirely accurate. Based on the video recording, nonetheless, the Court concludes that excessive force was not employed. Patrolman Reasor states that after telling

Mr. Holmberg to give his best guess as to the time, the latter reached up and grabbed Reasor's forearm tightly and did not release his grip before Reasor pushed Holmberg in the face. Mr. Holmberg, on the other hand, states that he merely reached up and touched Reasor's watch after being told to give the time. Reasor then freed his arm and struck Holmberg in the face. The video recording shows that after Patrolman Reasor told Mr. Holmberg that he had to make a guess as to the time, Holmberg reached up from his seated position and grabbed Reasor's wrist so tightly that Reasor had to pull his arm back, and slap the hand away with his free arm, in order to release Holmberg's grip. Once free of the grip, Reasor immediately forcefully pushed his hands into Holmberg's face.

Giving plaintiffs the benefit of all factual inferences, the Court cannot conclude that unreasonable force was used.

Undeniably, Mr. Holmberg reached up and tightly grabbed Reasor's arm although he had not been provoked in any way. Mr. Holmberg did not merely touch Reasor's watch. A reasonable police officer would certainly view Mr. Holmberg's action as aggressive toward Reasor especially given the fact that Holmberg was intoxicated, had been using profane and aggressive language throughout the booking process and had stood up several times despite being told to remain seated. Consequently, Reasor's reaction in striking Holmberg in the face was not unreasonable. Plaintiffs, in fact, do not argue that this particular action was an excessive use of force.

When the other officers observed Holmberg's action and Reasor's reaction to it, their action in bringing Holmberg to the floor was reasonable in that Holmberg clearly needed to be restrained in handcuffs at that point given the fact that he had made an aggressive

movement toward Patrolman Reasor.  The video recording shows that a struggle of several moments ensued wherein the officers are heard to tell Mr. Holmberg numerous times to get his hands behind his back so that he could be handcuffed.  Holmberg did not immediately comply and the officers needed to use some force in order to subdue Holmberg.  Once he was restrained, Holmberg was immediately stood up.

This Court recognizes that, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." *Lawrence v. Bloomfield Township*, 2008 WL 647163 (March 7, 2008) (citing *Graham,* 490 U.S. at 395)   The Court notes that Mr. Holmberg, while at times cooperative in the booking room, also used continuous profane language, answered some questions sarcastically, had previously stood up although told to remain seated and had attempted to take certain items which were within Patrolman Reasor's control.  Mr. Holmberg was intoxicated and Mrs. Holmberg could be heard screaming the entire time that the booking was taking place.  Given the situation and Mr. Holmberg's action in grabbing Reasor, it was entirely reasonable that Mr. Holmberg be handcuffed at that point and that some force be used to so effectuate that.  Clearly, the circumstances involved "split-second judgments" made by Reasor in response to Mr. Holmberg's action in grabbing him and the other officers in response to Reasor's reaction to Mr. Holmberg.  The situation was uncertain and rapidly evolving.  It would not have been clear to defendants that Mr. Holmberg sought only to grab Reasor's arm and then cease to take any other action.   Mr. Holmberg's declaration states that while detained at the police station, both Reasor and Tieber "kicked, punched, or otherwise struck" him.   The video recording, however, clearly shows that none of the several officers attempting to subdue

13

Holmberg kicked or punched him.  Moreover, Holmberg's previous deposition testimony did not specifically state that he was kicked, punched, or otherwise struck by Reasor or Tieber during the scuffle to restrain him.  Holmberg testified that he "believed" Tieber was one of the officers that "assaulted" him, but he did not state so with certainty.  And, Holmberg only testified that Reasor struck him in the face after Holmberg attempted to look at Reasor's watch.

For these reasons, defendants' actions were not objectively unreasonable in light of the facts and circumstances confronting them.  Accordingly, the Court does not find that excessive force was used.

Although concluding that excessive force was not used, the Court does not find that defendants' expert was necessary in this determination.  Samuel Faulkner, a former deputy sheriff, concludes that Reasor's and Tieber's "responses were reasonable in relation to Mr. Holmberg's aggressive and threatening actions."  (Doc. 18 Faulkner report at 8)[3] In his recitation of the facts, however, Faulkner states that the video recording shows that Holmberg was still holding on to Reasor when Tieber came to Reasor's assistance.  As discussed earlier, the video does not show this and, consequently, Faulkner's credibility is somewhat discredited.

Moreover, this Court finds that Faulkner's proffered testimony is unnecessary and consists of a legal conclusion.  Rather, the issue of whether excessive force was used would be within the competence of a lay jury.  The Sixth Circuit has stated that expert opinion

---

[3] Plaintiffs do not address the expert report.  Nor, as defendants point out, do plaintiffs provide their own expert.  As discussed herein, however, such an expert is not necessary.

testimony which merely expresses a legal conclusion as to whether an officer's use of force was objectively unreasonable is properly excluded because objective reasonableness is the precise legal standard to be used in a § 1983 qualified immunity inquiry.  *DeMerrell v. City of Cheboygan,* 206 Fed. Appx. 418 (6th Cir. 2006) (citing *Berry v. City of Detroit,* 25 F.3d 1342 (6th Cir. 1994) ("When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that *suggest* the answer to the ultimate issue or that give the jury all the information from *which it can draw inferences* as to the ultimate issue.")  Because Faulkner's opinion states that defendants' actions were reasonable, the Court finds that he is merely expressing a legal conclusion.

For these reasons, the Court has not considered Faulkner's opinion in reaching its conclusion herein.

As discussed herein, plaintiffs fail to demonstrate the violation of a constitutional right.  Because they do not do so, this Court need not proceed to the inquiry into whether the right was clearly established.  *Cherrington,* 344 F.3d at 636.  Plaintiffs' § 1983 claim fails.

**(2) State law claims**

The remaining allegations assert state law claims on behalf of Mr. Holmberg for battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence and negligence per se.  All are based on the actions of defendants asserted with regard to the § 1983 claim.  Because the state law claims are dependent upon a finding of unreasonable or excessive force, summary judgment is appropriate given that there is no issue of fact as to whether defendants used excessive force. *See Overholt v. Montville Tp.*, 169 Fed.Appx. 447 (6th Cir. 2006).

The final claim is for loss of consortium on behalf of Mrs. Holmberg. Because the claims asserted on behalf of Mr. Holmberg fail, this claim fails as well. *See Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776 (6th Cir. 2007) ("A claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury.") and *Yanovich v. Zimmer Austin, Inc.,* 255 Fed.Appx. 957 (6th Cir. 2007) ("A cause of action based upon a loss of consortium is a derivative action. That means that the derivative action is dependent on the existence of a primary cause of action and can be maintained only so long as the primary action continues.").

### **Conclusion**

For the foregoing reasons, Motion of Defendants Tieber and Reasor for Summary Judgment is granted.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/29/08